# United States Court of Appeals

*for the*

# First Circuit

Case No. 23-1161

ROBERT N. MELTZER, d/b/a The Mountain States Law Group,

*Plaintiff-Appellant,*

v.

THE TRIAL COURT OF THE COMMONWEALTH
BY JOHN BELLO, Its Administrator,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS, BOSTON IN CASE NO. 1:22-CV-10230-FDS,
F. DENNIS SAYLOR, IV, U.S. DISTRICT JUDGE

## BRIEF FOR PLAINTIFF-APPELLANT

ROBERT N. MELTZER
MOUNTAIN STATES LAW GROUP
*Attorneys for Plaintiff-Appellant*
33 Bradford Street
Concord, Massachusetts 01742
(978) 254-6289

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF THE ISSUES.........................................................1

STATEMENT OF THE CASE ............................................................2

STANDARD OF REVIEW .................................................................5

SUMMARY OF THE ARGUMENT ...................................................5

ARGUMENT .......................................................................................7

    A.    THE U.S. DISTRICT COURT ERRED IN ITS
           APPLICATION OF F.R.C.P. 12(b)(6) AS TO COUNT I...................7

    B.    THE U.S. DISTRICT COURT ERRED IN HIS
           APPLICATION OF F.R.C.P. 12(b)(6) AS TO COUNT II ...............14

    C.    THE U.S. DISTRICT COURT ERRED IN DENYING
           APPELLANT'S MOTION TO AMEND THE COMPLAINT
           TO ADD COUNT III AND COUNT IV ...........................................22

    D.    THE U.S. DISTRICT COURT ERRED IN DENYING
           APPELLANT'S MOTION TO AMEND THE COMPLAINT
           UNDER THE DOCTRINE OF *UBI JUS, IBI REMEDIUM*,
           THEREBY REQUIRING THIS PANEL TO REVERSE THE
           U.S. DISTRICT COURT'S DISMISSAL AND DENIAL
           AS EGREGIOUS INEQUITY TO THE CONCEPTS OF
           THE ADA........................................................................................29

CONCLUSION ..................................................................................30

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ................................................................... 5, 6, 7, 8

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ........................................................................ 7, 13

Cutler Associates, Inc. v. Palace Construction, LLC, et al.,
  132 F. Supp. 3d 191 (D. Mass. 2015) .................................................7, 8

Desrosiers v. Baker,
  486 Mass. 369 (2020) ................................................................... 17, 21

Goldman v. Belden,
  754 F.2d 1059 (2d Cir. 1985) ................................................................8

McDonald v. Wise,
  769 F.3d 1202 (10th Cir. 2014)..............................................................5

Tennessee v. Lane,
  541 U.S. 509 (2004) ...........................................................................1, 8

**Statutes & Other Authorities:**

U.S. Const., Amend. V ...........................................................................22

U.S. Const., Amend. XIV ............................................................... *passim*

28 U.S.C. § 1331 .....................................................................................1

28 U.S.C. § 1343 .....................................................................................1

28 U.S.C. § 2201 .....................................................................................1

28 U.S.C. § 2201(a) ..............................................................................14

28 U.S.C. § 2202 .....................................................................................1

42 U.S.C. § 1971 .....................................................................................1

42 U.S.C. § 1972 .....................................................................................1

42 U.S.C. § 1973 .....................................................................................1

42 U.S.C. § 1983 ...................................................................................1

42 U.S.C. § 1985 ...................................................................................1

42 U.S.C. § 12101(3) ...........................................................................15

42 U.S.C. § 12101(a)(3) .......................................................................15

42 U.S.C. § 12101(a)(5) .......................................................................15

42 U.S.C. § 12102(2) .............................................................................4

42 U.S.C. §§ 12131-12165 .....................................................................8

42 U.S.C. § 12131(2) ...................................................................... 14, 16

28 C.F.R. § 36.104 .................................................................................4

28 C.F.R. § 36.105 ...............................................................................20

28 C.F.R. § 36.105(a)(1)(i) ....................................................................9

28 C.F.R. § 36.105(e)(1)(2) ...................................................................9

28 C.F.R. § 36.201(b) ............................................................ 6, 15, 27, 29

28 C.F.R. § 36.202 ........................................................................... 20-21

28 C.F.R. § 36.504(a)(1)(a) ............................................................. 6, 29

28 C.F.R. Part 36 ..................................................................................20

Fed. R. Civ . P. 5.2(a) ............................................................................3

Fed. R. Civ . P. 8 ..................................................................................12

Fed. R. Civ . P. 12 ................................................................... 12, 14, 18

Fed. R. Civ . P. 12(b)(6) .................................................................. *passim*

Fed. R. Civ . P. 15 ...................................................................... 22, 30, 31

Fed. R. Civ . P. 15(a)(2) .......................................................................22

Fed. R. Civ . P. 56(c) ...........................................................................14

Massachusetts Declaration of Rights, Article XXX ...............................21

JURISDICTIONAL STATEMENT

The underlying Complaint was brought pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202, 42 U.S.C. §§ 1971-73, and 42 U.S.C. §§ 1983 and 1985. This Court has jurisdiction specifically delegated to it by the United States Congress in the Americans with Disabilities Act, and the right to seek declaratory judgment. This action seeks to redress the deprivation, under state and federal law, of rights, privileges, and immunities secured by the United States Constitution and the laws of the United States under the 14th Amendment of the United States Constitution, specifically <u>Tennessee v. Lane</u>, 541 U.S. 509 (2004).

STATEMENT OF THE ISSUES

To avoid confusion, the Memorandum issued by the U.S. District Court (A97) dismissing the Complaint and denying a Motion to Amend, is referred to as issuing from the "U.S. District Court," as opposed to the "Massachusetts Trial Court," the Defendant/Appellee:

- o The U.S. District Court erred in dismissing Count I of the Complaint, in which the primary issue for adjudication was the failure of the Massachusetts Trial Court to make appropriate accommodation under the Americans with Disabilities Act, under F.R.C.P. 12(b)(6), in a Memorandum that failed to acknowledge that sufficient evidence was specifically present to provide a plausible cause of action. The U.S.

1

District Court erred in dismissing Count II of the Complaint, in which the primary relief sought was a declaratory finding that a health policy imposed by the Massachusetts Trial Courts, as a precondition for entry, violated the Americans with Disabilities Act. The ADA precludes overbroad policy which creates barriers to access, and creation of the policy was beyond the constitutional power of the Massachusetts Trial Court.

o The U.S. District Court erred in denying a Motion to Amend to add Count III and Count IV, requesting declaratory judgment following review of a new Standing Order, 1-22, issued by the Massachusetts Trial Court during the pendency of this case, making permanent certain and unlawful barriers to access in a manner barred by the Americans with Disabilities Act.

STATEMENT OF THE CASE

Suit was filed on February 10, 2022 after Appellant was barred from the Massachusetts Trial Court based on a "mask mandate" (A1) issued as a "Standing Order" by the Massachusetts Supreme Judicial Court. Standing Order 4 (A33) issued by the Supreme Judicial Court, on or about July 12, 2021. Paragraph 7, "Masks," states that everyone, "[u]ntil further notice… even if fully vaccinated, must wear a mask covering their nose and mouth while inside a courthouse" and

2

further states that "[a]nyone who fails to wear a mask as required, after receiving a
verbal warning will be required to leave the courthouse immediately or will be
subject to such other sanction as the presiding judge or clerk-magistrate may
order." (A34). Appellant is a qualified individual who has been excluded from
participation in the services or activities of a public entity and entitled to
accommodation under The Americans with Disabilities Act. (A7). The Complaint
addressed the Appellant's request for accommodation. An email sent by Margaret
A. Peterson Pinkham (A 41), referencing a telephone communication between the
Appellant and ADA Coordinator Barbara Lewiton, in which Peterson Pinkham
references the specific disability (which was redacted for privacy in the filing
under F.R.C.P. 5.2(a).) She also states that Ms. Lewiton "offered two alternative
reasonable accommodations." These two accommodations were "Zoom" and
partial masking (A41, top paragraph) Appellant appealed the proposed
accommodation on November 29, 2022 as neither proposed accommodations
addressed Appellant's disability. (A42). The next letter (A47) continued the
interactive ADA process. The response from the Massachusetts Trial Court
Administrator (A48), again specifies that the Appellant "rejected two reasonable
accommodations proposed by the Land Court ADA Coordinator." The response,
(A48-A49), continued the interactive process. In the Administrator's January 24,
2022 email, the interactive process was terminated by the declaration that "as per

the Trial Court ADA Grievance Procedure, the decision or (sic) the Court Administrator is final." (A51). The "reasonable accommodation" to mask mandates during the recent alleged-pandemic was defined as a matter of law by the Massachusetts Department of Public Health that those who could not medically wear a face mask were exempt from any such requirement (A.22¶26) and that, by DPH determination a clear inference, exemption did not pose a direct threat to court officials. "Direct Threat" is defined by 28 CFR §36.104 as "a significant risk to the healthy and safety of others that cannot be eliminated by a modification of policies, practices, or procedures." The DPH had determined that "exemption" was the proper accommodation as no direct threat existed, such that the Massachusetts Trial Court was obligated to offer exemption as the reasonable accommodation.

Count I (A28-9) invoked the most typical Americans with Disabilities Act-type claim, in which the Appellant contends that the Massachusetts Trial Court failed to offer a "reasonable" accommodation to the Appellant following the interactive process required by the ADA, as the Massachusetts Trial Court's "mask mandate" barred the Appellant, a trial lawyer, from in-person court participation during an alleged pandemic commencing in 2020. The Massachusetts Trial Court, in repeating the medical condition and offering accommodation based on that understanding, confirmed that the Plaintiff qualified under §12102(2) of the ADA as having impediments to the major life activities of "standing…speaking,

breathing…concentrating, thinking, communicating, and working" if wearing a face covering as mandated.

Count II, challenged the legal authority of the Massachusetts Trial Court to create mask mandates (A12 ¶11, A15¶22-25, A15¶26-27, A22¶26) based on constitutional, federal and state law precedent.

The final issue on appeal is the denial of the Motion to Amend (A119) which was based upon a new standing order 1-22, dated September of 2022, which created a "presumption" of remote hearings (A88). Counts III and Count IV are both federal questions raised in the proposed Amended Complaint in §§ 113-114, in which it is contended that the new Standing Order contains the same problem as the mask mandate—that the new policy consists of overregulation under the ADA, that it was created without appropriate power to legislate and that it interfered with recognized rights under the 14th Amendment.

## STANDARD OF REVIEW

The standard of review on a matter dismissed under F.R.C.P. 12(b)(6) is de novo review. McDonald v. Wise, 769 F.3d 1202,1210 (10th Cir. 2014).

## SUMMARY OF THE ARGUMENT

1. The U.S. District Court erred in granting the Motion to Dismiss under F.R.C.P. 12(b)(6), as the Appellant has demonstrated "plausibility" under the standard of Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), in that the

primary issue in Count I was the "reasonableness" of the accommodation offered to the Appellant, and in which the proper accommodation had already been identified by the Department of Public Health ("DPH") as exemption.

2. The U.S. District Court erred in granting the Motion to Dismiss under F.R.C.P. 12(b)(6), as the Appellant has demonstrated "plausibility" under the standard of Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), in that the primary issue in Count II was a declaratory judgment under the ADA's anti-Jim Crow clause finding that the Massachusetts Trial Court had no authority to regulate health policy in terms of face masks.

3. The U.S. District Court erred in denying the Motion to Amend the Complaint by adding Counts III and Count IV, which raised the same issue as Count II in terms of excessive exercise of unlawful power by the Massachusetts Trial Court, which is appurtenant to the U.S. District Court's power as to Count II to offer full and complete relief in the form of declaratory judgment.

4. The U.S. District Court erred in refusing to exercise its equitable power under the ADA, particularly 28 CFR § 36.504(a)(1)(a) which specifically grants to the federal court the power to review rules made that violate the "anti-Jim Crow" provisions of 28 CFR §36.201(b) in that rules  that impact

the protected class of the disabled must "based on actual risks and not on

mere speculation, stereotypes, or generalizations about individuals with

disabilities." Consequently, under the doctrine of *Ubi Jus, Ibi Remedium,*

where there is a wrong, there must be a remedy, the U.S District Court, in

refusing to adjudicate the rational bases of the standing orders of the

Massachusetts Trial Court, has constructively nullified the ADA in the

Commonwealth, an inequitable result that this Panel must not allow to stand.

ARGUMENT

A. THE U.S. DISTRICT COURT ERRED IN ITS APPLICATION OF
F.R.C.P. 12(b)(6) AS TO COUNT I

F.R.C.P. 12(b)(6) authorizes the Court to dismiss a claim based on "failure

to state a claim upon which relief can be granted" In Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007), the Court held that a complaint must 'state a claim that

is plausible on its face." In Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), the Court

held that "a claim has facial plausibility when the Appellant pleads factual content

that allows the court to draw the reasonable inference that the Defendant is liable

for the alleged misconduct alleged." Under F. R. C. P. 12(b)(6), to overcome a

"motion to dismiss for failure to state a claim, a complaint must allege sufficient

facts 'to state a claim to relief that is plausible on its face.'" Cutler Associates, Inc.

v. Palace Construction, LLC et al 132 F.Supp.3rd 191,194 (D. Mass. 2015) citing

7

Ashcroft v. Iqbal, 556 U.S. 662,667 (2009). The process is specific: "First, the court must separate the complaint's factual allegations, which must be accepted as true, from its conclusory legal allegations, which are not entitled to presumptions of truth…Second, the court must accept the remaining factual allegations as true and decide, if drawing all reasonable inferences in the plaintiffs' favor, they are sufficient to show an entitlement to relief." Cutler Associates, 132 F. Supp. 3rd at 194, citations omitted. The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

The Appellant's lawsuit is based upon the Americans with Disabilities Act of 1990, as Amended, 42 U.S.C. §§ 12131-12165 and its attendant regulations. The ADA "provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity…" See Tennessee v. Lane, 541 U.S. at 513.

The U.S. District Court acknowledged the Appellant's standing to bring suit (A107) and acknowledged that the parties held an interactive process (A18, fn. 10). The U.S. District Court then stated that "the complaint does not plausibly allege that Appellant has a physical impairment that substantially limits a major life

8

activity."  The Massachusetts Trial Court, by offering an accommodation, clearly

disagreed with this, and the Massachusetts Trial Court and the U.S. District Court

are estopped from denying the physical impairment, as the Massachusetts Trial

Court accepted the existence of a plausible physical impairment in making an

accommodation narrowly tailored to the plausible physical impairment. The U.S.

District Court therefore made a common error in ADA jurisprudence by confusing

cause and effect. 28 CFR §36.105(a)(1)(i) contains the definition of "disability" as

something which "substantially limits one or more of the major life activities,

which are biological, stating that "the definition of 'disability' shall be construed

broadly in favor of expansive coverage, to the maximum extent permitted by the

terms of the ADA…" which, under §36.105(e)(1)(2) "if the individual has a

history of an impairment that substantially limited one or more life activities " and

"when compared to most people in the general population." In A-29, Complaint

¶88, the Appellant specifies that he is under specific instruction from a physician

not to wear a face mask. The "disability" under the law and as defined is breathing,

which impacts functions of standing, walking, concentrating and the other

elements that occur when oxygen is denied to the brain. Difficulty "breathing" is

the legal disability, but it  is not the underlying ailment, just as a person who is

wheelchair-bound has a disability due to inability to "walk," not because of

"amputation" or "landmine explosion." The extent of demonstrating "disability" is

to define the major life activity, broadly construed, with no need to tell one's life story. The DPH, in making its lawful mask policy, made this distinction clearly, in stating that those who are disabled by being incapable of safe breathing if wearing a mask are therefore exempt, as a matter of "don't ask, don't tell." The DPH got it right. The Massachusetts Trial Court in providing the proposed accommodation based upon difficulty breathing got it right to the extent that it did not delve into the cause rather than the effect. The Massachusetts Trial Court got it wrong by not offering the accommodation of the DPH. The U.S. District Court, in failing to construe disability "broadly" and by demanding more than the law requires, got it wrong. The issue of plausibility of the disability was not before the U.S. District Court because the Massachusetts Trial Court accepted the disability and moved on to remedy. The issue was not before the Court under Rule 12(b)(6) because Appellant plausibly demonstrates that the issue of "disability" was satisfied during the interactive process.

Appellant simply contends in Count I that the Massachusetts Trial Court failed to provide a reasonable accommodation to the Appellant. Notwithstanding that the U.S. District Court confirmed that "Appellant has standing to bring his claims," (A107), denied that the Appellant's claim was moot (A110), denied that the claim was barred on the grounds of "judicial immunity" (A111) and acknowledged that "Exhibit 3 attached to the complaint includes an e-mail from Margaret Peterson

Pinkham in which she writes 'when we spoke, you stated that you have a condition called [redacted]…," (A114), then makes the incongruous comment that "the complaint here does not identify the impairment for which Appellant purports to suffer." (A114) Having confirmed that Ms. Peterson Pinkham confirmed that the Massachusetts Trial Court understood the impairment and offered an accommodation on the basis of that understanding, wrote that "…failure of the complaint here to identify Appellant's impairment here is sufficient reason to grant the motion to  dismiss" and somehow arrives at the conclusion that "the complaint does not plausibly allege that Appellant has a physical impairment that substantially limits a major life activity…" (A116) notwithstanding that the interactive process confirms that the Massachusetts Trial Court had sufficient understanding of the disability to offer accommodation. In short, having acknowledged that the Appellant had standing, that he had brought his claim to the attention of the Massachusetts Trial Court, that an interactive process had occurred in which the Defendant to be charged developed an understanding sufficient to make an offer of accommodation, the U.S. District Court then dismissed the case anyway.  In a case in which a legal claim was made on admitted facts, and the facts *were* admitted by the Massachusetts Trial Court, the U.S. District Court did not rely on plausibility, which is easily shown, but weighed the evidence by its own standards and opinions, and found the Complaint wanting. This is seen by all of

pages 17-21 (A113-A117) of the U.S. District Court's Order, a recitation of legal issues that have no relevance whatsoever to the sole factual question of Count I, whether the Appellant received a reasonable accommodation. Period. This satisfies F.R.C.P. 8 as a short and plain statement sufficient to withstand challenge under F.R.C.P. 12. Redaction of private medical information does not change the fact that the Massachusetts Trial Court was on notice of the allegations charged.

The overbreadth of the error of the U.S District Court is clearly shown on Page 22 of the Memorandum (A118) when it states that "Appellant has sought no form of 'accommodation' other than the elimination of the mask policy entirely." That, in fact, is not correct. The accommodation sought under Count I was that the Appellant, and others so situated, were exempted from the mandate as a matter of law, and that the actions of the Massachusetts Trial Court in refusing that exemption were unlawful. Paragraph 49 of the Complaint (A22) confirms that the DPH, a state executive agency, had assumed authority delegated to it to make mask mandate policy containing exemptions for those in the Appellant's class of disability. The bottom of page 17 of the Complaint, ¶50 (A22), states, unambiguously, that "the following persons are exempt from the face coverings requirement…persons for whom a face mask or covering creates a health risk or is not safe because of any of the following conditions or circumstances: the face mask or covering affects the person's ability to breathe safely; *the person has a*

12

*…medical diagnosis that advises against wearing a face mask or covering…*"
Paragraph 88 states of the Appellant that "his physician has specifically advised
against the wearing of face masks in consultation with, and in review of, the
Appellant's medical status." This order from the DPH also tracks the language of
the ADA in terms of disability. Thus, the issue of reasonableness of the proposed
accommodation under the interactive process is not a question of fact, but one of
law. The DPH, the body that makes health policy, states categorically that the
accommodation for those who cannot wear face masks is for them not to wear face
masks. Indeed, the Massachusetts Trial Court Administrator, who rejected
exemption based on "public health concerns in the midst of an active pandemic…"
was not only incompetent to raise the issue of "direct threat," but also lacked the
legal power to override the DPH. Under the law of the Commonwealth, the
accommodation was exemption to the mask mandate, and the Appellant had the
absolute right to demand it, and the U.S. District Court had no right to demean that
demand. Whether or not the Appellant's proposed accommodation, or the
Massachusetts Trial Court's proposed accommodation, is the proper and
reasonable one, is not the issue for court review under F.R.C.P. 12(b)(6)—the
question as to which party is being reasonable or unreasonable does not affect the
plausibility of the entire case under Bell Atl. Corp.

The U.S. District Court's dismissal was not only erroneous under F.R.C.P.

13

12(b)(6), but also seemed to be advocating for legal and factual positions that the Massachusetts Trial Court did not, nor could not, have raised in a Motion to Dismiss. Count I is more than plausible—the Appellant seemingly is entitled to summary judgment on Count I as a matter of law under F.R.C.P. 56(c), yet the court dismissed it under Rule 12. This is absurd, such that the allowance of the Motion to Dismiss was clearly erroneous and must be reversed.

## B. THE U.S. DISTRICT COURT ERRED IN HIS APPLICATION OF F.R.C.P. 12(b)(6) AS TO COUNT II

The original Complaint specifically stated that the court's jurisdiction was being brought pursuant to 28 U.S.C. §2201(a), which states that "in a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

As a matter of statute under the Americans with Disabilities Act, the U.S. District Court has been granted the power to issue declaratory judgments invalidating or modifying "rules, policies, or practices" which impedes access "for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. 12131(2). The Americans with Disabilities Act also

14

identified, as an area of concern, "overprotective rules and policies." 42 U.S.C.

12101(3). Count II to the Complaint, which the U.S. District Court dismissed

under F.R.C.P. 12(b)(6), asks the U.S. District Court to issue declaratory judgment

that the mask mandate was not legally enacted, and that the remedy for removing a

barrier to access for the Appellant would be the invalidation of the "rule, policies,

or practices" which create a bar not only to the Appellant but to those similarly

situated.

Like Count I, Count II of the Complaint was statutory, and raised the claim

under the ADA that the mask mandate itself was invalid as a matter of law in that

the mandate created a disability which did not exist but for the regulation. The

basis of Count II is found in the ADA, § 12101(a)(3) and § 12101(a)(5), which

notes that the ADA was crafted in part to avoid "forms of discrimination, including

outright intentional exclusion" because of "overprotective rules and policies." This

cause of action, which precludes discrimination arising out of mass hysteria and

panic, and which was most recently seen in the HIV/AIDS crisis which was

ongoing as the ADA was being crafted, has, fortunately, essentially remained

dormant, until the frenzy of fear experienced by government officials in 2020. The

ADA, which is a civil rights law, was equally concerned about "Jim Crow" laws

that punished the disabled, such that the ADA contains its own anti-Jim Crow

provision. In 28 CFR §36.201(b), a policy which is overprotective, overbroad and

in violation of the ADA is one not "based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities." The letter from the Massachusetts Trial Court Administrator (A48), with its speculative and uninformed and incompetent declarations about what is "unreasonable" during "an active pandemic" but which is not shared by the DPH, is a Jim Crow response to generalization and speculation based on unwarranted fear.

The mask mandate in issue here is an example of an invisible disability becoming activated and acute by "overprotective rules and policies" resulting in "outright intentional exclusion" from "access to public services." Indeed, the language was carried into Title II, §12131(2), where the definition of Qualified Individual, includes "an individual with a disability who, **with or without reasonable modifications to rules, policies**…meets the essential eligibility requirements for the receipt of services or the participation in programs or activities by a public entity."  The right to seek modification by declaratory judgment against overly broad rules is statutory. The Complaint went in to great detail about the limitations of power of the Massachusetts Trial Court to make health policy.  Paragraph 12 to the Complaint (A60) states that "Article XXX to the Massachusetts Declaration of Rights says that the judicial shall never exercise the legislative and executive power." Paragraphs 22-24 of the Complaint (A15)

16

notes that in the Civil Defense Case known as <u>Desrosiers v. Baker</u>, 486 Mass. 369

(2020), handed down on December 10, 2020, the Massachusetts SJC affirmed that

the right to make Covid policy was reserved to the Executive by the Legislature,

and that "an unelected state judiciary…cannot make health policy." Paragraph 49

of the Complaint confirms that the Massachusetts Department of Public Health, an

executive state agency, had assumed the authority delegated to it to make mask

mandate policy containing exemptions for those in the Appellant's class of

disability. (A22). It was also noted in the Complaint that Congress, when acting

during the alleged Covid pandemic, did not address any abeyance of the ADA. In

the Complaint, ¶¶64-73 (A25-26), the Appellant specifically noted the regulatory

failures of the Massachusetts Trial Court in attempting to exercise power to issue

the Jim Crow mask mandate. Paragraphs 25-27 of the Complaint (A15-A16)

contain recitations of recent case law that limited the agency from issuing

mandates. Paragraph 29 of the Complaint (A17) noted that the Massachusetts Trial

Court had historically accepted the limits on making health policy in terms of

"Standing Orders." (See A93, a list of "Standing Orders" which indicates a shift in

2020 from case-related rules to health policy without identification of legal power

to regulate.) Without belaboring the point further, the Appellant provided a

substantial basis for the position that the Massachusetts Trial Court had usurped

powers not assigned to it in issuing mask mandates, and, to this day, the

Massachusetts Trial Court has not justified its usurpation of power, including the apparent contention that the Massachusetts Trial Court is not subject to its own, SJC, holdings. The Complaint identified these constitutional and legal restraints, and asked the U.S. District Court to declare the mask mandate unlawful in order to address the ADA disability, as is permitted by statute. There is no countervailing statement in the Massachusetts Trial Court's Motion to Dismiss that identifies a legal basis for the mask mandate, and Appellant contends, in fact, that he is entitled to summary judgment on this issue. Instead, the U.S. District Court dismissed Count II under F.R.C.P. 12.

On page 18 of the Order, the U.S. District Court judge seems to demonstrate that he doesn't even understand Count II, writing that "it is difficult to know what to make of that jumble of indefinite and contradictory statements…" (A114). Appellant notes that chaos is often caused when a government agency has, in fact, operated outside of its power, which tends to throw a monkey-wrench into the process, which is a logical consequence, and marker, of the plausibility of Appellant's claim; if the Massachusetts Trial Court had acted lawfully, the Appellant would not have to explain why it did not, and why even the Massachusetts Trial Court did not bother justifying its actions; this is why discovery is permitted and whatever the Massachusetts Trial Court wants to say is reserved as a defense for trial.  In any event, if a hearing had been scheduled and

held in the U.S. District Court, it would have been explained to the Court in as long was required.

Here, the court was confronted with something statutory that was not new, and was not novel, but also not common. Appellant provided a very and perhaps overly comprehensive explanation to the U.S. District Court of the relatively rare cause of action caused by policy created by mass hysteria which led the Massachusetts Trial Court to ignore the law and commonsense protections of the ADA, as occurring when policy makers unfairly create total exclusion based on the classification of those who cannot comply with the hysteria and demeans them as plague rats. It is no coincidence that the ADA was crafted and signed in the early 1990s, in response to the dual threat to the rights of AIDS patients and Vietnam Veterans in the late 1980s, which was a motivating factor in the political groundswell that surrounded creation of the ADA. A party excluded by medical classification has every right to ask a court, by specific statute and regulatory guidelines, to examine that policy for its legal and factual soundness, and to seek declaratory judgment accordingly. Count II was not a "jumble" but a recitation of specific constitutional statements which barred the Massachusetts Trial Court from issuing the mask mandate. All of what is the Complaint must be accepted as true under F.R.C.P. 12(b)(6).

The Appellant notes that, in many ways, an action for declaratory judgment

under the ADA that removes barriers to access are a form of class action, since the remedy benefits not only the party with immediate standing, as the U.S. District Court found, but for those who cannot come forward, or who will come forward in the future with the same grievance. Access ramps are not provided only for the complainant who demands access; the ADA is a proactive statute that makes access invisible to all. In providing a remedy that calls for voiding "overprotective policies," Congress was noting that overzealous regulations, not grounded in any possible reality, could and would create barriers based on disability which would otherwise not arise. The government cannot create harm by policy; to the extent that the government has done so, the policy, not the claimant, must give way. Breathing problems are not necessarily disabling until government officials overreact at the thought of the disabled breathing near them.

      The right to access without demand. and the right not to be sacrificed to the speculative fears of others in times of hysteria, which once seemed like radical government meddling in the private sector were, over time, were enshrined in the ADA and regulations that guide Title III, 28 CFR Part 36 and the case law since the ADA was enacted. For example, 28 CFR 36.105 holds that Title III is construed broadly, and the kind of "extensive analysis" of the underlying condition is deemed improper as an invasion of medical privacy, a concept that the U.S. District Court missed in demanding more analysis of Appellant's disability. 28

CFR 36.202 notes that claims by one individual are *de facto* class actions, as the remedy benefits those similarly situated once the claimant has established standing. And so on. These core principles, which seek to restore dignity, privacy and respect for the disabled, form the core of the ADA, and the failure of the U.S. District Court to give deference to these principles made his decision of dismissal erroneous and reversible. Under F.R.C.P. 12(b)(6), the question before the court on Count II was facial plausibility. Was the claim facially plausible? The answer is yes. There were abundant examples in the Complaint that the Massachusetts Trial Court lacked legal power to enact a mask mandate or to otherwise engage in the creation of health policy in a time of hysteria and out of fear and speculation, and that mandate, which provided no exemptions, were overbroad and thus void under the ADA. It is worth reiterating from the Complaint, ¶11 to the Complaint (A12) states that "Article XXX to the Massachusetts Declaration of Rights says that the judicial shall ***never*** exercise the legislative and executive power." and that ¶¶ 22-24 of the Complaint (A15) referencing <u>Desrosiers v. Baker,</u> 486 Mass. 369 (2020) that the right to make Covid policy was reserved to the Executive by the Legislature, and that "an unelected state judiciary…cannot make health policy." And that ¶49 of the Complaint (A22) confirms that the Massachusetts DPH had regulated to the exclusion of the Massachusetts Trial Court. Thus, not only did the Appellant have standing under the ADA, but that he also represents a class of others so situated

21

against an overly broad policy or regulation that the Massachusetts Trial Court did not have the authority or competence to issue. Moreover, the Massachusetts Trial Court, in making a health policy outside of its traffic lane, infringed on the lawful regulating agency, the DPH, and otherwise threw the idea of privacy, dignity and rule of law to the wind. Finally, the Appellant was substantially, as opposed to hypothetically, damaged, when the Massachusetts Trial Court turned a Land Court judge into a *de facto* ADA inquisitor as to the Appellant's biological differences, and effectively made an unlawful taking of Appellant's business income in violation of the 5th Amendment of the United States Constitution. (A47).

Appellant claimed his right to U.S. District Court review of the Massachusetts Trial Court's overly broad and underinclusive policy as permitted by the ADA, and pled the legal source of the violation, uncontested by the Massachusetts Trial Court. The claim the policy was voidable, and should have been void, was properly pled and was more than plausible. Dismissal of the claim under F.R. C.P. 12(b)(6) was egregious error and must be reversed.

C. THE U.S. DISTRICT COURT ERRED IN DENYING APPELLANT'S MOTION TO AMEND THE COMPLAINT TO ADD COUNT III AND COUNT IV

The U.S. District Court erred in denying Appellant's Motion to Amend the Complaint to add new causes of action which arose after the filing of the original Complaint, and which were sufficiently pled under F.R.C.P. 15.  Rule 15(a)(2)

states that "the court should freely give leave... [to amend] ...when justice so requires." The basis for denial of the Motion to Amend is unclear, as the proposed amendment does nothing more than extend the same argument as Count I and Count II to a Standing Order which was created after suit was filed. In terms of plausibility, the Massachusetts Trial Court continues to attempt to legislate court access without legal authority to act. While Appellant's standing is based on ADA concerns, it is also based upon the fact that the Massachusetts Trial Court is fundamentally altering public access to the courts, and the manner in which lawyers represent their clients.

The new counts reflect the fact that the Massachusetts Trial Court has attempted to fundamentally change the way lawyers represent their clients, removing their agency and otherwise warping a 300-year-old constitutional court with its processes, procedures and policies from an adversarial common law system to something akin to the French Civil Law system, by Standing Order. The Standing Order was overly broad, as it was made with knowledge of challenges to remote hearings under the ADA and with callous disregard to those rights and without power. The Amended Complaint focuses on the clear 14th Amendment and ADA issues, because these are the impacts which have emerged first in terms of actual damages, but the remaining damage to law practice as it works is on the horizon. The Appellant urgers this Panel to review the Motion to Amend itself, a motion

23

which clearly was given short shrift by the U.S. District Court.

Much as the mask mandate was flawed for failure of process, so Standing Order 1-22 should be declared so as well. Appellant does not even understand the U.S. District Court's reasoning; this is not a case of "generalized grievance," which seems to be the judge's main point (A121) and as discussed below—the Appellant has been uniquely harmed and continues to be harmed. The Massachusetts Administrative Procedures Act is implicated here because it is demonstrative as pled that the Standing Order constitutes a form of regulation which requires public hearings, which the Massachusetts Trial Court is not structurally formulated to conduct, but which, in this case, constitutes a contempt for Lane v. Tennessee, by attempting to alter a 14th Amendment right to court access. Count III and Count IV seeks review of an unlawful act by the Massachusetts Trial Court which is presumptively unconstitutional.

Appellant again directs the Panel's attention to A41, the interactive process by which the Appellant rejected remote hearings as an accommodation as unreasonable in not resolving the access of the disabled to court process without submission to an illegal inquisition into medical fitness to participate in court proceedings. In Appellant's December 6, 2021 letter, A47, Appellant noted that he was being excluded from court access on ad hoc basis in specific courts, meaning that the process of access to courts had, by December 6, 2021, vested in judges

with no medical background or understanding of the ADA, the right to interrogate individual lawyers on their medical information and to bar them accordingly.  As Administrator Bello's letter infers, A48, the Massachusetts Trial Court actually believes that a Land Court judge with an expertise in zoning, easements and 40B permitting appeals is fit to order the Appellant to disclose confidential medical information to his clients, opposing counsel and the courts, and then should be subjected to medical interrogation by a Land Court judge as a condition precedent to court access to perform his job, which was denied by the Land Court judge who made a determination of reasonable accommodation to accept his way or the highway. Not only was the process humiliating and degrading, but the Medical Inquisition was facially illegal. Far from having a "generalized grievance," as the U.S. District Court opined, the Appellant had a personal, visceral and harmful experience of outsourced medical inquisition as a threshold condition precedent for participation in legal process—and was caused substantial financial harm as well. The Land Court, and now Standing Order 1-22, places a medical fitness requirement on the practice of law, and Standing Order 1-22 authorizes potential clients to refuse to retain lawyers who cannot pass that test.

Effective September 1, 2022, apparently on the basis of a sparsely conducted survey with ambiguous results, the Massachusetts Trial took the bad pilot program which caused actual and demonstrable harm to the Appellant under the ADA and

enshrined it as Standing Order 1-22, a permanent and arbitrary medical inquisition to be carried out without guidance by random session judges. (A88) Standing Order 1-22, which permits a session judge to arbitrarily preclude public appearance, absolutely requires a trial lawyer who cannot use Zoom or similar remote video conferencing to inform all potential clients in new matters of a potential disability which under Standing Order 1-22 may preclude effective representation under the Rules of Professional Responsibility. Damages are not generalized or hypothetical—Standing Order 1-22 is a past, current and ongoing impediment to Appellant's practice of law, and the right of the client to the lawyer of his choice, and it certainly also impacts the broader legal community.

In fact, the Massachusetts Trial Court has admitted to the frightening paucity of intellectual thought that went in to creating the new Standing Order. Chief Justice Heidi Brieger has admitted (A94) that the legislative process in which a survey of 4413 anonymous lawyers out of 51,000 lawyers statewide were in favor of broader access to remote court hearings, and that interest in more remote hearings served as the basis of unelected judges creating a mandate binding on over 6,974,258 residents of Massachusetts to presumptively bar courthouse doors, with no consideration of those who cannot comply. This is not how law is made in a nation dedicated to ordered liberty. The Massachusetts Trial Court did not engage in a democratic process with checks and balances, and certainly did not have the right

to supplant the Massachusetts General Court's exclusive right to create laws that so vastly impact every citizen of the Commonwealth and those doing business here, and the only redress is the power of the U.S. District Court, which the Appellant has invoked. The Court provides buildings and judges. It does not and cannot tell those who use those services how to run their businesses, particularly when the unauthorized act invokes violation of the ADA. Constitutional law is, at its core, a combination of denial of rights enjoyed by others, and frustration at that denial; frustration arises from unfairness, which lawyers and the courts distill to denial of equal protection under the law. The Appellant in this case has not worn a face covering of any kind since a serious medical experience in 2014, which impacts breathing and cannot and has not used Zoom or other remote teleconferencing, and will not do so in the future. Parenthetically Appellant has also not had Covid. Nonetheless, the Massachusetts Trial Court has treated the Appellant, and almost everyone else, like a plague rat contrary to 28 CFR §36.201(b), inflicting a policy which is overprotective, overbroad and in violation of the ADA is one not "based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities." The Standing Orders are arbitrary, making policy inconsistent with the Massachusetts Trial Court's legal powers and in contravention of the ADA and, incidentally, violating laws while claiming exemption from state laws such as the Administrative Procedures Act, which

specifically requires public hearings so that the regulating agency can be informed of information outside of the regulatory echo chamber. On August 14, 2020, A42-46, following the issuing of an imperious Report and Recommendation to the Justices of the Supreme Judicial Court on the Resumption of Jury Trials, the Appellant brought to the Massachusetts Trial Court's attention that its proposed policies violated federal law, and correctly and presciently predicted that these policies "promise to transform our Courts into a hostile environment for litigants and court officials…" and that "there will be lawyers, witnesses, jurors, court officers, judges, reporters and other court personal who need to walk around the courts without face coverings, and will not be using hand sanitizer, and who will not submit to screening or vaccines, and that they will be doing so under the protection of federal and constitutional law." This letter was met with silence. If the Massachusetts Trial Court wants to legislate, and if it has a right to legislate, which it certainly does not, then the Massachusetts Trial Court must engage in the public hearing process as any other legislative body would do. There is a strong and discernible line between, on one hand, a session judge granting a lawyer, with good cause shown, an opt-out on live appearance (superintendency power), and, on the other, requiring a lawyer who wishes to be in court, to go from judge to judge for permission to opt in, which is outside the power of the Massachusetts Trial Court to mandate. The policies referenced in the Standing Order are clear

violations of the ADA and the rules against overbreadth against a class, thereby

warranting the exercise of power granted to the federal court to review and

appraise and correct Jim Crow laws. The refusal of the Court to even allow the

Motion to Amend, to refuse to even consider the legality of disability-based

discrimination as a matter of public policy, was reversible error.

D. THE U.S. DISTRICT COURT ERRED IN DENYING APPELLANT'S
   MOTION TO AMEND THE COMPLAINT UNDER THE DOCTRINE OF
   UBI JURIS, IBI REMEDIUM, THEREBY REQUIRING THIS PANEL TO
   REVERSE THE U.S. DISTRICT COURT'S DISMISSAL AND DENIAL
   AS EGREGIOUS INEQUITY TO THE CONCEPTS OF THE ADA

It is evident that the Massachusetts Trial Court was and is legislating without

definable oversight, mandating federal court review, and that the issue is a live

controversy subject to the Appellant's Amended Complaint. Massachusetts is not

running a court system that meets standards of equal protection under the laws and

the Constitution, and the federal court is the entity with the specific power to

intervene and correct and there is no reason not to do so here. 28 CFR §

36.504(a)(1)(a) specifically grants to the federal court the power to review rules

made that violate the "anti-Jim Crow" provisions of 28 CFR §36.201(b); this is not

a state cause of action, particularly when the state is the bad actor.

Professor Charles Reich, the great constitutional lawyer and thinker who

pioneered so much of the thinking on overbreadth of policy under the ADA and its

impact on the bar of access to justice for the disabled, used to say "there is no 'me'

in lawyer, or 'me' in judge, or 'me' in juror, but you can find 'us' in the courts." This philosophy is enshrined in the ancient legal doctrine of *Ubi Jus, Ibi Remedium*, stating that where there is a right, there must be a remedy. In <u>Lane</u>, the Supreme Court held that access to Courts and public participation in court activities is a protected 14th Amendment right (*ubi jus*), and a state trial court that impacts that access by rules and policies created outside of public view, can only find its remedy in the U.S. District Court (*ibi remedium*). Appellant made a plausible argument in his proposed Amended Complaint that the Massachusetts Trial Court in creating Standing Order 1-22 was not complying with legal power on the most important element of a democratic system—the right to access to the Courts, with particular disadvantage to the disabled, a protected class under the ADA. Denying the Appellant to bring that claim having been personally harmed by its logical consequences, was egregious error and denial Appellant's right to seek court review, all in violation of the liberal standard of F.R.C.P. 15, and the denial must be reversed.

## CONCLUSION

For the foregoing reasons, that the U.S. District Court exceeded its powers under F.R.C.P. 12(b)(6) in dismissing Count I and Count II by misapplying the concept of "plausibility" where the primary issues were factual issues of whether accommodation was "reasonable" and whether the Massachusetts Trial Court had

invoked and continues to invoke Jim Crow style exclusionary policies which are

overbroad and under inclusive, subject to the declaratory judgment power of the

U.S. District Court to strike, and because the Court erred in denying amendment

under F.R.C.P. 15 relating to new acts violating the same principles, the dismissal

and denial of the U.S. District Court's Order should be REVERSED.

Respectfully submitted,

/s/ Robert N. Meltzer

Robert N. Meltzer
(1st Cir. Bar No. 84979)
(BBO No. 564745)
Mountain States Law Group
33 Bradford Street
Concord, MA 01742
(978) 254-6289
inbox@mountainstateslawgroup.com

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this document complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,368 words.

I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in a 14-point Times New Roman font.

Dated:  April 17, 2023

/s/ Robert N. Meltzer
Robert N. Meltzer

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system, which electronically served a copy on all counsel of record.

Dated:  April 17, 2023

<u>/s/ Robert N. Meltzer</u>
Robert N. Meltzer

# ADDENDUM

## ADDENDUM TABLE OF CONTENTS

**Page**

Memorandum and Order on Defendant's Motion to Dismiss and
Plaintiff's Motion to Amend Complaint, filed December 9, 2022.... ADD1

Order of Dismissal, filed December 12, 2022 ....................................... ADD27

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ROBERT N. MELTZER, d/b/a THE MOUNTAIN STATES LAW GROUP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 22-10230-FDS |
| THE TRIAL COURT OF THE COMMONWEALTH, by JOHN BELLO, ADMINISTRATOR, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO AMEND COMPLAINT

**SAYLOR, C.J.**

This is a case arising out of a mask mandate implemented in the courts of the Commonwealth of Massachusetts in response to the COVID-19 pandemic. Plaintiff Robert N. Meltzer is an attorney licensed to practice in Massachusetts. He is proceeding *pro se*.

In July 2021, the Massachusetts Supreme Judicial Court issued a standing order requiring all individuals entering state courthouses to wear masks to limit the spread of COVID-19. According to the complaint, plaintiff was denied access to several Massachusetts courthouses after refusing to wear a mask. The Trial Court denied his request for an exemption from the masking policy and offered him the alternatives of appearing by videoconference or taking short, unmasked breaks outside of the courtroom during in-person proceedings. He refused to accept either alternative.

Instead, on February 10, 2022, plaintiff brought this lawsuit. The complaint alleges that

the Trial Court violated his rights under Title II of the Americans with Disabilities Act, 42
U.S.C. §§ 12131-12165, by failing to provide a reasonable accommodation for his claimed
condition.  He seeks monetary damages and declaratory and injunctive relief.

On September 2, 2022, plaintiff moved to amend his complaint in response to the
Superior Court's adoption of Standing Order 1-22 on August 12, 2022, designating certain court
proceedings to be "presumptively held by videoconference."  (Mot. to Amend, Ex. I at 3).  The
proposed amendments would add the following claims:  a violation of the 14th Amendment
"right of free access to the courts"; a violation of the Massachusetts Declaration of Rights; an
additional violation of the ADA; and a violation of the Massachusetts Administrative Procedure
Act, Mass. Gen. Laws ch. 30A, § 2(5)(b).

Defendant has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) for lack of
jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.  It contends
that plaintiff lacks standing to bring this suit, that his claims are moot and/or barred by sovereign
and absolute judicial immunity, and that the complaint fails to allege sufficient facts to state a
claim for relief under the ADA.  It opposes the motion to amend on the ground that the amended
complaint would fail to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and
that amendment would therefore be futile.

Ostensibly, the subject of the complaint is disability discrimination.  Nonetheless, it says
next to nothing about plaintiff's claimed disability.  Instead, it consists almost entirely of a
rambling and hyperbolic tirade against the state court system generally and the mask requirement
specifically.  Among other things, it compares the mask requirement to waterboarding, and
invokes the United Nations Convention Against Torture (Compl. at 2); alleges that "the Trial
Court does not seem to know how a court system works or why, or what lawyers actually do in a

2

courthouse" (*id.*); alleges that the mask requirement "grossly corrupted the very notion of the Court by transferring power from the people to access the building, to those who control the Zoom system" (*id.* ¶ 32); that it transformed the courts to "an austere and liminal dystopian and non-democratic space that . . . has been utterly alienating in a sterile environment that is mostly noteworthy as a utilitarian and uninviting human wasteland" (*id.* ¶ 36); that the defendant "has clearly forgotten what a court is" (*id.* ¶ 39); and that the response of government officials to the pandemic was a product of "mass hysteria" (*id.* ¶ 40).

Indeed, despite being 27 pages long, the complaint does not even identify the alleged disability from which plaintiff claims to suffer.  It alleges only that he has a "*de jure*" disability (asserting vaguely that his "physician has specifically advised against the wearing of face masks in consultation with, and in review of, [his] [unidentified] medical status") and a "*de facto*" disability (asserting that his disability is caused by "the masking policy itself," which "would evaporate with termination of the policy or exemption to it").  (Compl. ¶¶ 88, 98).[1]

Plaintiff is, of course, entitled to his own opinions.  But the issue here is not whether the SJC policy in 2021 was wise or unwise.  Plaintiff is not the Chief Justice of the SJC, nor the administrator of the Trial Court, nor any other government official charged with the difficult task of formulating the response of the state courts to the COVID-19 pandemic.  The only relevant question for this court is whether the policy, as applied to plaintiff, is lawful—in particular, whether it violates the Americans with Disabilities Act.  For the reasons set forth below, the Court concludes that it does not.

Accordingly, and for the following reasons, the motion to dismiss for lack of jurisdiction

---

[1] It is unclear why the complaint refers to the policy-induced disability as "de facto" and his claimed medical disability as "de jure"; even accepting plaintiff's basic construct, those terms appear to be reversed.  The Court will nonetheless use plaintiff's terminology.

will be denied, the motion to dismiss for failure to state a claim will be granted, and the motion to amend will be denied.

## I.    **Background**

The following facts are set forth as alleged in the complaint and attached exhibits.

### A.    **Factual Background**

Robert N. Meltzer is an attorney licensed to practice law in Massachusetts.  (Compl. ¶ 3).  He practices under the name "Mountain States Law Group" in Concord, Massachusetts.

The Trial Court of the Commonwealth is a division of the Massachusetts state judiciary.  John Bello is its Administrator.

#### 1.    **The Standing Order**

In July 2021, in response to the COVID-19 pandemic, the Massachusetts Supreme Judicial Court ("SJC") issued a standing order requiring that "all persons seeking entry to a Massachusetts state courthouse or other state court facility" wear "a mask covering their nose and mouth while inside a courthouse."  (Ex. 1 ("Fourth Standing Order") at 1-2).  The Standing Order provided that "[a]nyone who fails to wear a mask as required, after receiving a verbal warning will be required to leave the courthouse immediately or will be subject to such other sanction as the presiding judge or clerk-magistrate may order."  (*Id.*).  It further stated that "[t]he presiding judge or clerk-magistrate may modify this rule in a courtroom or hearing room during a judicial proceeding consistent with any policy established by the Trial Court or the relevant appellate court."  (*Id.*).  The Standing Order went into effect on July 12, 2021.

The Standing Order was issued by the SJC, not the Trial Court.  The Trial Court is the

only defendant in this case.[2]

### 2.   ADA Grievance Process

According to the complaint, in November 2021, Meltzer requested an exemption under the ADA from the mask mandate after (he claims) he was "barred from public participation in court proceedings in open court." (Compl. ¶ 52).

On November 8, 2021, Meltzer spoke with Barbara Lewiton, an ADA Coordinator with the Trial Court, to seek an exemption from the mask policy. (Ex. 3). He "did not disclose to her the nature of [his] disability." (*Id.*).

Lewiton offered Meltzer two accommodations: "appearing via video conferencing (Zoom) or arranging for frequent breaks to leave the courtroom so that [plaintiff could] remove [his] mask for several minutes at a time." (*Id.*). He rejected both of those proposed accommodations, and requested that he simply be exempted from the requirement. (*Id.*).

Meltzer then contacted the Director of the Office of Workplace Rights, Margaret Peterson Pinkham. When they spoke, "[he] stated that [he had] a condition called [redacted in exhibit], which [he] explained is not a disability, and [he] asserted it becomes a disability due to the Supreme Judicial Court's Standing Order requiring all persons to wear masks at all times while in state courthouse buildings." (*Id.*). Pinkham again rejected his request for exemption, concluding that "due to the threat to the health and safety of other court users and Trial Court employees, it is unreasonable to allow [Meltzer] to appear in the courthouse without a mask." (Ex. 3).

On November 29, 2021, Meltzer appealed that decision to the Administrator of the Trial

---

[2] The complaint nonetheless alleges that the Trial Court exceeded its constitutional powers by "legislating" health policy.

Court, John Bello.  (Compl. ¶ 55; Ex. 4).  He elaborated upon his argument that the SJC's Order had imposed a "*de facto*" disability, and again rejected the court's proposed accommodations as insufficient.  (Ex. 4 at 1-2).  He followed up on December 6, 2021, to supplement his appeal with additional legal arguments and to note that he had "been barred from in-person hearings in the Land Court, Middlesex Superior Court, Worcester Superior Court, Uxbridge District Court and the Middlesex Probate and Family Court."  (Compl. ¶ 56; Ex. 5).  He also stated that he was "incurring actual and severe monetary losses and damage to [his] law practice and its reputation" as a result of his alleged inability to appear in court in person.  (Ex. 5).

On December 27, 2021, Bello concluded that the appeal was moot because the Land Court hearing that Meltzer could not attend in person had been conducted "by videoconference for all parties."  (Compl. ¶ 64; Ex. 6).

On January 17, 2022, Meltzer sent a letter to Bello expressing his belief that the Trial Court had failed to comply with the requirements of the ADA and requesting reconsideration of his request for exemption.  (Compl. ¶ 75; Ex. 7).  Bello responded on January 24, 2022, indicating that his decision was final.  (Ex. 8 at 1).

### 3.   <u>SJC Fifth Standing Order</u>

On March 23, 2022, after this suit was filed, the SJC repealed the Fourth Standing Order and replaced it with a Fifth Order Regarding Public Access to State Courthouses & Court Facilities ("Fifth Standing Order").[3]  The new Order altered the policy on mask-wearing to specify that "[m]ask wearing is encouraged inside courthouses" but "not required," except for

---

[3] On a motion to dismiss, the court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment:  (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).  The Court will consider the Fifth Standing Order as an official public record.

those "who have tested positive, experienced symptoms, or had close contact with someone with COVID-19 within the previous 10 days." (Dkt. No. 10, Ex. 1).

### B.   Procedural Background

On February 10, 2022, Meltzer brought this lawsuit against the Trial Court. The complaint alleges two counts. First, it alleges that he was denied a reasonable accommodation under the Americans with Disabilities Act for his alleged "*de jure* disability," which prevents him from wearing a mask indoors. (Compl. ¶¶ 87-93). Second, it alleges that the mask mandate created a "*de facto* disability" that prevents him from engaging in court activities. (Compl. ¶¶ 94-107). This second claim, while fashioned as a cause of action under the ADA, also asserts a state-law separation-of-powers claim, specifically that the Trial Court exceeded its "superintendency power" in adopting the Fourth Standing Order. (Compl. ¶¶ 100-103).

The complaint requests that the court issue a declaratory order stating that his rights were violated under the ADA and that defendant acted outside of its authority in adopting the Fourth Standing Order. (Compl. at 26-27). It also requests damages, costs, and attorney's fees. (Compl. at 27). The complaint appears to request injunctive relief, though it does not specify in what form. (Compl. ¶ 86).

In his opposition to the motion to dismiss (and not as a separate motion), Meltzer moved to strike Exhibits 3-5 and pages 14-17 of defendant's memorandum in support of its motion.[4] The Court will not consider the challenged documents here because they were not part of the complaint. The Court addresses the challenged legal arguments as part of its analysis of plaintiff's ADA claim.

---

[4] The challenged exhibits are docket reports and e-mails indicating that Meltzer appeared at several hearings virtually. The challenged pages contain defendant's argument that plaintiff was not denied meaningful access to public services "by reason of" a disability.

ADD7

## II.    **Standard of Review**

### A.    **Fed. R. Civ. P. 12(b)(1) Standard**

On a motion to dismiss for lack of subject-matter jurisdiction, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)). If the party seeking to invoke federal jurisdiction "fails to demonstrate a basis for jurisdiction," the motion to dismiss must be granted. *Id.* When ruling on a motion to dismiss under Rule 12(b)(1), the court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

### B.    **Fed. R. Civ. P. 12(b)(6) Standard**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305

8

(1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III.   Analysis

Notwithstanding the labels used in the complaint, the Court understands plaintiff to be raising two claims.[5]  The first is a federal claim for failure to accommodate his disability in the provision of public services under Title II of the ADA.  The second is a state constitutional-law challenge to the validity of the Fourth Standing Order itself, on the basis that it exceeded the superintendency power of the Trial Court.  Because the court lacks diversity jurisdiction, it will first analyze the federal claim before deciding whether to exercise supplemental jurisdiction over the state claim.

### A.   Standing

Defendant first argues that the complaint does not allege that plaintiff has suffered an injury-in-fact sufficient to establish standing to bring this case.  Because "the court lacks jurisdiction to decide the merits of the underlying case" if a party lacks standing, the court will decide this issue first.  *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992).

Article III standing is a prerequisite for subject-matter jurisdiction, and "the plaintiff bears the burden of pleading facts necessary to demonstrate standing." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).  "The heartland of constitutional standing is composed of the familiar amalgam of injury in fact, causation, and redressability."  *Id.* at 731 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  "An injury sufficient to satisfy Article III must be 'concrete and

---

[5] Count One alleges a federal claim of "de jure" disability under the ADA.  Count Two alleges (in one count) a federal claim of "de facto" disability under the ADA and a state-law claim challenging the validity of the Fourth Standing Order.  The Court will analyze the ADA claims of "de facto" and "de jure" disability together.

particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Lujan*, 504 U.S. at 560) (internal quotation marks omitted).  Concreteness requires that an injury "actually exist," while particularization requires that an injury "affect the plaintiff in a personal and individual way."  *Lyman v. Baker*, 954 F.3d 351, 360-61 (1st Cir. 2020) (first citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016); and then citing *Lujan*, 504 U.S. at 560 n.1).  "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," *Lujan*, 504 U.S. at 561, which here is "the plausibility standard applicable under Rule 12(b)(6)," *Hochendoner*, 823 F.3d at 730.

Plaintiffs challenging government-imposed mask mandates in federal court have frequently been unable to establish the required injury-in-fact.  Specifically, courts have declined to find standing where plaintiffs challenged mask mandates that had not yet been applied to them directly.  *See, e.g.*, *Bechade v. Baker*, 2020 WL 5665554 at *2 (D. Mass. Sept. 23, 2020) (plaintiff had not "suffered any concrete and particularized injury" resulting from the Massachusetts statewide mask mandate where she had not "*personally* been forced to wear a mask").  Courts have similarly declined to find that plaintiffs with medical conditions were injured where a mask mandate included exemptions for such conditions.  *See, e.g.*, *Beaudoin v. Baker*, 530 F. Supp. 3d 169, 174 (D. Mass. 2021) (no injury where plaintiff was exempt from mask requirement due to hearing impairment).  Finally, courts have been reluctant to find standing where plaintiffs have lodged generalized objections to mask policies, rather than claims of particularized harm.  *See, e.g.*, *Bechade*, 2020 WL 5665554 at *3 ("the general threat of fine . . . for noncompliance with the mask requirement" did not constitute an injury in fact because "[e]very resident of Massachusetts face[d] this same general threat of enforcement, and

10

[plaintiff] fail[ed] to plead any individual desire or intention to violate the mask requirement which might distinguish her from other residents.").

Nevertheless, this case seems to rest on a different footing.  While it is true that the Trial Court never forced plaintiff to wear a mask, the injury claimed in the complaint is to his alleged inability to practice his profession.  The complaint alleges that he was "denied access to court buildings," "los[t] the ability to engage in the practice of law as a trial lawyer," and "incur[ed] actual and severe monetary losses and damage to [his] law practice and its reputation" because of his claimed inability to appear in person.  (Compl. ¶ 2; Ex. 5 at 1).  Furthermore, the language of the Fourth Standing Order did not carve out exceptions for medical conditions, and plaintiff was in fact denied an exemption.  (Compl. ¶ 64; Ex. 6).  And although he was offered accommodations, he claims that those accommodations were unreasonable.  (Compl. ¶ 53). Finally, his alleged injury is distinct from that potentially suffered by all members of the public, because it derives from a claimed impairment that he says makes it uniquely harmful for him to wear a mask.  (Compl. ¶ 88 ("[Plaintiff's] physician has specifically advised against the wearing of face masks in consultation with, and in review of, [his] medical status.")).

Taken as true, those allegations are sufficient to show that plaintiff has standing to bring his claims.  His assertion that the masking policy was applied directly to him goes beyond a "general threat of enforcement" and establishes a claimed injury that is concrete and particularized.  Furthermore, this injury is traceable to the defendant's alleged conduct in denying him entrance into court buildings and declining his request for exemption.  *See Lyman*, 954 F.3d at 361 ("Causation is established by demonstrating a causal connection 'between the injury and the conduct complained of . . . .'" (quoting *Lujan*, 504 U.S. at 560-61)).  And the alleged injury is arguably redressable—for example, by an award of damages or an injunction

11

against future application of the mask requirement. *See Delaney v. Baker*, 511 F. Supp. 3d 55, 68 (D. Mass. 2021) ("[T]he plaintiff must demonstrate that a favorable ruling will at least lessen the injury.").

Whether the plaintiff has standing to assert a claim is a distinct issue from whether the complaint states a claim upon which relief can be granted. Put another way, simply because he claims an injury does not mean that the complaint adequately alleges a right to recover. Nonetheless, to the extent that the motion to dismiss asserts a lack of standing, it will be denied.

### B. <u>Mootness</u>

Defendant further contends that the subsequent Fifth Standing Order rescinding the mask requirement moots plaintiff's claims for declaratory and injunctive relief.[6]

Article III of the Constitution limits federal subject-matter jurisdiction to actual cases and controversies. *See* U.S. Const. art. III, § 2. "The doctrine of mootness enforces the mandate that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed." *American Civ. Liberties Union of Mass. ("ACLUM") v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003)) (internal quotation marks and citations omitted)). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *D.H.L. Assocs., Inc. v. O'Gorman*, 199 F.3d 50, 54 (1st Cir. 1999)). The party invoking the doctrine bears the burden of establishing mootness. *Conservation L. Found. v. Evans*, 360 F.3d 21, 24 (1st Cir. 2004). A court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's

---

[6] Plaintiff's claims for monetary losses resulting from the mask policy are not subject to a mootness analysis.

favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

Two First Circuit cases dealing with COVID-related orders are instructive here.  In *Bayley's Campground, Inc. v. Mills*, 985 F.3d 153 (1st Cir. 2021), the plaintiffs challenged a COVID-related executive order issued by the governor of Maine that required out-of-state travelers to quarantine for two weeks upon arrival.  The First Circuit concluded that the replacement of the original executive order with a less restrictive self-quarantine requirement did not moot the claims for injunctive relief.  *Id.* at 155.  Despite the fact that "nothing in the record suggest[ed] that the Governor rescinded [the executive order] for litigation-related reasons rather than to account for changing [pandemic] conditions," the court concluded that the governor had not "carried 'the formidable burden' that she bears 'of showing that it is absolutely clear the allegedly wrongful burden could not reasonably be expected to recur.'" *Id.* at 157-58 (quoting *ACLUM*, 705 F.3d at 53).

The court in *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3 (1st Cir. 2021) reached the opposite result.  There, an arcade owner sought injunctive and declaratory relief from executive orders that placed arcades in a later phase of reopening from COVID-19 restrictions than casinos.  *Id.* at 6-7.  The First Circuit held that the plaintiff's claims were moot after the governor returned arcades to the same re-opening phase as casinos, ended the state of emergency, and rescinded all COVID-19 orders issued under the Civil Defense Act.  *Id.* at 9.

The facts here are more similar to *Bayley's Campground*.  Unlike in *Boston Bit Labs*, where the governor had rescinded all emergency orders, here the Fifth Standing Order retains some COVID-19 restrictions (although not a mask mandate) for entrants to state courthouses.  *Id.* at 11.  Perhaps more importantly, the claim in *Boston Bit Labs* depended on the emergency order treating classes of businesses differently, making it unlikely that the state would impose the same

ADD13

policy in the future.  Here, it is not "unrealistically speculative" to expect that the Trial Court

might reimpose a mask mandate in the future if public-health conditions were to change.  *Id.* at

10.  Defendant therefore cannot meets its "formidable burden . . . of showing that it is absolutely

clear the allegedly wrongful burden could not reasonably be expected to recur." *Bayley's*

*Campground, Inc.*, 985 F.3d at 157-58 (quoting *ACLUM*, 705 F.3d at 55).

Accordingly, the motion to dismiss the claims for declaratory and injunctive relief on the

basis of mootness will be denied.

### C.    Judicial Immunity

Defendant next contends that the actions of the Trial Court are protected by judicial

immunity.

Judges are absolutely immune from suits for damages for actions taken within their

jurisdiction and the scope of their judicial responsibilities.  *Mireles v. Waco*, 502 U.S. 9, 11-12

(1991).  "The doctrine of quasi-judicial immunity provides absolute immunity for those [other

than judges] who perform tasks that are inextricably intertwined with the judicial function."

*Nystedt v. Nigro*, 700 F.3d 25, 30 (1st Cir. 2012).

In determining whether an act is judicial, courts consider (1) whether the defendant

"perform[s] a traditional adjudicatory function"; (2) whether the defendant "decide[s] cases

sufficiently controversial that, in the absence of absolute immunity, he would be subject to

numerous damages actions"; and (3) whether the defendant "adjudicate[s] disputes against a

backdrop of multiple safeguards designed to protect [plaintiff]'s constitutional rights."

*Bettencourt v. Board of Registration in Med. of Com. of Mass.*, 904 F.2d 772, 783 (1st Cir. 1990)

(internal quotations omitted).  "The bedrock judicial function is . . . the adjudication of disputes,"

while "[o]ther traditional judicial functions include such things as 'weighing evidence, making

factual findings, reaching legal determinations, choosing sanctions, and expounding reasons for

14

[] decisions.'" *Goldstein v. Galvin*, 719 F.3d 16, 25 (1st Cir. 2013) (first citing *Nystedt*, 700 F.3d at 31; and then citing *Coggeshall v. Massachusetts Bd. of Registration of Psychologists*, 604 F.3d 658, 663 (1st Cir. 2010)).  Judicial immunity has not been extended to "administrative, legislative, or executive functions." *Forrester v. White*, 484 U.S. 219, 227 (1988).

Here, the Trial Court performed an administrative rather than a quasi-judicial function when it considered and denied plaintiff's request for exemption as part of its ADA grievance process.[7]  The process of granting and denying requests for accommodations generally involves the application of statutory and regulatory factors to individual applicants, rather than the adjudication of disputes between parties.  And there are no facts suggesting that the ADA coordinators acted in a courtroom context or in the course of a judicial proceeding.  *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1134-35 (9th Cir. 2001) (material issue of fact as to whether trial court administrator who doubled as ADA coordinator acted in an administrative, rather than quasi-judicial, function in implementing accommodation requirements under the ADA).

Accordingly, defendant's motion to dismiss on the ground of judicial immunity will be denied.

### D.    Sovereign Immunity

Defendant next asserts that plaintiff's claims are barred by sovereign immunity.[8]

In *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court held that Title II of the ADA validly abrogates state sovereign immunity insofar as it "creates a private cause of

---

[7] Again, the SJC is not named as a defendant, and therefore the Court need not consider whether the issuance of the Fourth Standing Order was an act of judicial character, or even an act of a legislative character entitling that court to legislative immunity.  *See Supreme Ct. of Virginia v. Consumers Union*, 446 U.S. 719 (1980).

[8] To the extent that plaintiff seeks to hold defendant Bello personally liable, there is no individual-capacity liability under Title II of the ADA, and the claim will be dismissed.  *Logie v. Massachusetts Bay Transportation Auth.*, 323 F. Supp. 3d 164, 177 (D. Mass. 2018).  Any claims against Bello in his official capacity will be dismissed for failure to state a claim.

15

action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." *Id.* at 159. Title II may also abrogate sovereign immunity if Congress's proscription of a "class of conduct" constitutes a valid exercise of its enforcement powers under Section 5 of the amendment. *See id.*; *see also Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004).

Abrogation of sovereign immunity under Title II is determined on a claim-by-claim basis. *See Georgia*, 546 U.S. at 159. Thus, for each claimed ADA violation, the complained-of conduct (1) must violate Title II and (2) either (a) must violate the Fourteenth Amendment or (b) its proscription must bear congruence and proportionality to the rights protected under that Amendment. *Toledo v. Sanchez*, 454 F.3d 24, 31, 35 (1st Cir. 2006). Courts must address the sufficiency of the Title II claim before proceeding to the constitutional analysis. *Buchanan v. Maine*, 469 F.3d 158, 172-73 (1st Cir. 2006) (holding that a district court erred in reaching the merits of the Eleventh Amendment issue before resolving whether the complaint had stated a claim under Title II).

The Court does not reach the second prong of the analysis because it determines that the complaint fails to state a claim under Title II.

### E. <u>Title II of the ADA</u>

Title II of the ADA prohibits discrimination by public entities against persons with disabilities in the provision of public services, programs, or activities. 42 U.S.C. § 12132. To state a claim, a complaint must allege "(1) that [plaintiff] is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000).

The First Circuit has identified "denial of a reasonable accommodation the plaintiff needed to meaningfully access a public service" as one of three types of discrimination prohibited under Title II of the ADA, in addition to disparate treatment and disparate impact. *Snell v. Neville*, 998 F.3d 474, 500 n.35 (1st Cir. 2021) (citing *Nunes v. Massachusetts Dep't of Correction*, 766 F.3d 136, 144-46 (1st Cir. 2014)).  For accommodation-based claims, a public entity denies meaningful access if it refuses to "make reasonable modifications . . . when . . . necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  *Pollack v. Regional Sch. Unit 75*, 886 F.3d 75, 80 (1st Cir. 2018) (citing 28 C.F.R. § 35.130(b)(7)(i)).

The first question is whether the complaint adequately alleges that plaintiff is a "qualified individual" with a "disability" within the meaning of the ADA.

### 1.      Qualified Individual

Persons with disabilities are "qualified" for protection under Title II of the ADA if "with or without reasonable modifications to rules, policies, or practices . . . [they meet] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).  For present purposes, the Court will interpret the program or activity at issue to be the ability to practice law in the state-court system. As a member of the Massachusetts bar, plaintiff is generally eligible to participate in court proceedings.  The principal question is therefore whether he suffers from a legally cognizable disability.

### 2.      Disability

Courts apply a three-prong test to determine whether a disability exists under the ADA, considering (1) whether plaintiff has a physical or mental impairment; (2) whether the life

activities plaintiff relies upon are ''major''; and (3) whether the impairment substantially limits plaintiff's major life activities. *Carroll v. Xerox Corp.*, 294 F.3d 231, 238 (1st Cir. 2002) (internal citations omitted); *see also* 42 U.S.C. § 12102(1)(A).[9]  An impairment that is sporadic can qualify as a disability "if it would substantially limit a major life activity when active."  42 U.S.C. § 12102(4)(D).

The complaint here does not identify the impairment from which plaintiff purports to suffer.[10]  At various points in his interactions with the Trial Court, he declined to disclose "the nature of [his] disability"; asserted that his condition was "not a disability"; and claimed that it "bec[ame] a [*de facto*] disability due to the Supreme Judicial Court's Standing Order."  (Ex. 3; Compl. ¶ 98).  The complaint also alleges that plaintiff's "physician has specifically advised against the wearing of face masks in consultation with, and in review of, the Plaintiff's medical status," without indicating what that "medical status" might be.  (Compl. ¶ 88).

It is difficult to know what to make of that jumble of indefinite and contradictory statements.  Normally, a court is required to construe a *pro se* complaint liberally, but here the plaintiff is a lawyer—and a trial lawyer at that.  There is no obvious reason why the Court should be indulgent in the face of plaintiff's apparent unwillingness to draft a complaint that specifically alleges the disability from which he purports to suffer.[11]  And while the standard for pleading an

---

[9] The complaint does not allege one of the alternative bases for establishing the existence of a disability, either that plaintiff has a record of an impairment or that he is regarded as having an impairment.  42 U.S.C. § 12102(1)(B), (C).

[10] While the complaint generally claims that mask use is "dangerous to a broad swath of the population susceptible to conditions known as hypoxia and other forms of oxygen deprivation," it does not allege that plaintiff himself suffers from any such disorder.  (Compl. at Intro.).  Exhibit 3 attached to the complaint includes an e-mail from Margaret Peterson Pinkham in which she writes:  "When we spoke, you stated that you have a condition called [redacted]."  (Ex. 3).

[11] The Court is unaware of any case law supporting the proposition that the ADA recognizes what the complaint calls "*de facto*" and "*de jure*" disabilities as bases for separate causes of action.  The only case provided

ADA claim is not demanding, neither is it non-existent.  At a bare minimum, an ADA plaintiff must allege that he or she has an impairment —otherwise the statute does not apply—and identify what that impairment is—otherwise the defendant cannot fairly defend itself.  The failure of the complaint here to identify plaintiff's impairment here is sufficient reason to grant the motion to dismiss.

Even if plaintiff had identified an impairment, "[e]vidence of a medical diagnosis of impairment, standing alone, is insufficient to prove a disability."  *Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 187 (1st Cir. 2011).  There must also be evidence that the impairment substantially limits one or more of an individual's major life activities.[12]  The plaintiff is required to specify the major life activity in which he claims to be substantially limited.  *Id.* at 188.

Whether an impairment substantially limits major life activities is "not intended to be a 'demanding standard' and should not engender 'extensive analysis'" in light of the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553.  *Mancini v. City of Providence*, 909 F.3d 32, 42 (1st Cir. 2018).  Generally, "an individual with a disability will be able to establish coverage [under the ADA] by showing substantial limitation of a major life activity other than working" because "impairments that substantially limit a person's ability to work usually substantially limit one or more other major life activities."  29 C.F.R. pt. 1630, App'x at 23.  When the *only* life activity impaired is working, the plaintiff must "show a substantial limitation in his 'ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities.'"  *Mancini*, 909 F.3d at 42 n.6 (citing 29 C.F.R. pt. 1630, App'x at 24).

---

by plaintiff, *BST Holdings, LLC v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604 (5th Cir. 2021), says nothing about either disabilities or the ADA.

[12] "Working" is recognized as a major life activity under the ADA.  42 U.S.C. § 12102(2)(A).

Even under those lenient standards, the complaint does not plausibly allege that plaintiff has a physical impairment that substantially limits a major life activity.  It generally alleges that the Fourth Standing Order "barr[ed] the Plaintiff from participating in social activity and regular life activity."  (Compl. ¶ 81).  But it also alleges that his "disability" only exists when he is forced to wear a mask—indeed, it specifically alleges that "it is the masking policy itself which leads to the disability," and that the disability "would evaporate with the termination of the policy or exemption to it."  (*Id.* ¶ 98).  Of course, the Fourth Standing Order did not require plaintiff to wear a mask outside the courthouse.  In fact, the complaint alleges that "[a]t no time during the alleged pandemic has the Plaintiff ever worn a face mask."  (Compl. ¶ 97).  It is therefore unclear, to say the least, how his purported impairment, which is induced only by wearing a mask, affected his "social activity and regular life activity"—particularly when those activities, by definition, do not occur in the courthouse.

In any event, the only life activity of plaintiff that is allegedly impaired by his disability is working—more precisely, that portion of his occupation that requires him to appear as a lawyer in a state courthouse.  But the complaint fails entirely to allege a plausible basis for a claim of a "substantial" limitation on his ability to work as a lawyer, compared to other lawyers who have comparable training, skills, and abilities.

To begin, the great majority of the work of a lawyer with a litigation practice involves reading, writing, meeting with clients and witnesses, and other activities that occur outside the courthouse.  The complaint does not allege any condition that impairs plaintiff's work outside of the courtroom.  As for legal work that occurs in court, the complaint does not allege that his effectiveness as an advocate has been impaired by his alleged exclusion from the courthouse, compared to other lawyers who do not share his "disability."  During the pandemic, it became

commonplace for lawyers to appear by video for court hearings, and the complaint does not

allege that lawyers who do so are at a disadvantage compared to those who appear in person with

masks.

In fact, the complaint does not even *allege* that the mask mandate put plaintiff at a

relative disadvantage to other lawyers; to the contrary, it alleges that the mandate placed *all*

lawyers at the *same* disadvantage. According to the complaint:

> The Defendant's actions in creating mask mandates and mandating remote hearings and
> barring the doors to the Court for two years has fundamentally prevented lawyers from
> being able to represent their clients within the legal system, eliminating the ability of
> lawyers to perform the usual and customary activities which transpire within the Court on
> a regular basis and which make the system work, not only in arguing motions and trying
> cases but by removing the interchanges between counsel and clerks and others within the
> court system . . . ."

(Compl. ¶ 34). In other words, according to the complaint, the mask mandate did not impose a

"substantial limitation" on plaintiff's ability to perform work as a lawyer, compared to other

lawyers who have similar training, skills, and abilities. *See Mancini*, 909 F.3d at 42 n.6. Instead,

it treated all lawyers the same. And that is simply not a plausible basis for a claim of

"disability," much less a claim of unlawful discrimination.

In summary, and taken in its entirety, the complaint fails to allege a cognizable

"disability" under the ADA. Accordingly, the motion to dismiss for failure to state a claim will

be granted.

### 3.    Reasonable Accommodation

As noted, the complaint here alleges discrimination in the form of failure to make a

reasonable accommodation to plaintiff's disability. Specifically, it alleges that the Trial Court

"has failed to engage in a good faith interactive process, and has failed to offer any form of

reasonable accommodation" to plaintiff. (Compl. at 2). It contends that the "proposed

'accommodation' offered by the Trial Court is not only unreasonable, but also reflects a lack of

21

understanding what the Trial Court is and how it is constitutionally configured." (*Id.* at 4). Plaintiff rejected out of hand the proposed accommodations—that he appear by videoconference for court hearings, and that he take short unmasked breaks when in the courthouse. The complaint refers to the former as an "absurd suggestion" and to the latter as a proposal that he "would only voluntarily suffocate for part of the time in the court building," (*id.* ¶ 53), and to both as a "canard." (*id.* ¶ 64). Plaintiff has sought no form of "accommodation" other than the elimination of the mask policy entirely.

In light of the Court's finding that the complaint fails to allege a "disability" within the meaning of the ADA, the Court need not reach the question of whether the complaint plausibly alleges that defendant failed to make a reasonable accommodation for that disability.[13]

### F.    Separation of Powers Claim

Having determined that plaintiff's federal claim under the ADA will be dismissed, the Court now turns to plaintiff's state-law claim. The complaint alleges that the Trial Court exceeded its superintendency power by "declar[ing] health policy" without demonstrating "any kind of compelling governmental need," and that even if the Trial Court had the authority to issue the Fourth Standing Order, it lacked a "nexus" to public need and was not "narrowly tailored." (Compl. ¶¶ 100-107). The complaint itself alleges that the SJC—and not the Trial Court—issued the Fourth Standing Order, rendering that claim somewhat incoherent. In any event, the Court will interpret this as a constitutional claim arising under state law.

If an action includes both federal-law and state-law claims, then the district court may

---

[13] To the extent that the complaint appears to allege the failure to engage in a good-faith interactive process as an alternative theory of liability under the ADA, the claim will also be dismissed for failure to show the predicate requirement of a qualifying disability. (Compl. Intro. at 2). Furthermore, plaintiff has moved to strike any discussion of the reasonableness of the accommodations from defendant's memorandum in support of its motion to dismiss, on the ground that this is a question for the jury. (Plaintiff's Opp'n at 18). Because plaintiff has failed to establish the existence of a disability, that argument is moot.

exercise supplemental jurisdiction over the state-law claims.  28 U.S.C. § 1367.  However, where the claims based on federal law have been dismissed, or otherwise disposed of, a "district court has discretion to decline to exercise supplemental jurisdiction" over the state-law claims.  *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 431 n.10 (1st Cir. 2010); *see also* 28 U.S.C. § 1367(c)(3). In so deciding, the court "must take into account considerations of judicial economy, convenience, fairness to the litigants, and comity."  *Delgado v. Pawtucket Police Dep't*, 668 F.3d 42, 48 (1st Cir. 2012).  "[I]t can [also] be an abuse of discretion—if no federal claim remains— for a district court to retain jurisdiction over a pendent state law claim when that state law claim presents a substantial question of state law that is better addressed by the state courts."  *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017); *see also* 28 U.S.C. § 1367(c)(1).

Here, the Court will decline to exercise supplemental jurisdiction over the state-law claim after the only federal claim has been dismissed.  Because no discovery or motion practice has occurred other than the present motions, dismissal of the state-law claims will not inconvenience the parties nor impair the efficiency of court proceedings.  Furthermore, the complaint alleges a substantial question of state constitutional law that would be best addressed, if at all, by the state courts.

Accordingly, because the Court declines to exercise its supplemental jurisdiction, and to the extent the complaint asserts a state-law claim, it will be dismissed without prejudice.

## IV. __Motion to Amend__

Plaintiff filed a motion to amend his complaint on September 2, 2022.  The amended complaint seeks to add several claims in response to the Superior Court's Standing Order 1-22, which provides that certain court proceedings shall take place by videoconference.

Under Federal Rule of Civil Procedure 15, a party may amend its pleading once as a matter of course within 21 days after serving it, or within 21 days after service of a responsive

pleading or motion under Rules 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1).  In all other cases, a party may amend a pleading only with consent of the opposing party or leave of the court.  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires," *id.*, "unless the amendment would be futile or reward undue delay," *Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 117 (1st Cir. 2009).

"In the context of a motion to amend, 'futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'"  *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, 2022 WL 104911, at *6 (D. Mass. Jan. 11, 2022) (quoting *O'Leary v. New Hampshire Boring, Inc.*, 323 F.R.D. 122, 126 (D. Mass. 2018)).  "If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)."  *Hatch v. Department for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001).  In short, an amendment must state a "plausible entitlement to relief."  *Rodríguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007) (quoting *Bell Atl. Corp.*, 550 U.S. at 559).

The proposed amended complaint first alleges that Superior Court Order 1-22 violates "the recognized 14th Amendment due process right" to "free access to the courts."  (Amend. Compl. ¶ 113).  It also seeks to add an additional violation of the ADA on the ground that the order requires "those with disabilities . . . to prove, on a daily basis, the existence of a recognized disability in order to participate in the public administration of justice."  (Amend. Compl. ¶ 114).  Finally, it alleges that order violates the Massachusetts Declaration of Rights as exceeding the superintendent power of the courts, as well as the Massachusetts Administrative Procedure Act for failure to conduct public hearings before engaging in "rulemaking."  (Amend. Compl.

¶¶ 112, 116-125).

With respect to the Fourteenth Amendment and ADA claims, the proposed amended complaint does not allege that plaintiff has participated in proceedings falling within the categories presumptively held by videoconference under the Superior Court Order.  Nor has he sought permission from a judge to hold such a hearing in person, as allowed under the order. While plaintiff alleges generally that the administration of justice is impaired by remote proceedings, this amounts to a "generalized grievance" against a policy that he disagrees with in the abstract, rather than an concrete and particularized harm sufficient to establish standing.  *See Beaudoin*, 530 F. Supp. 3d at 175.  Nor has he shown that injury is "certainly impending," because he does not allege any plans to imminently engage in proceedings that would be subject to the order.  *See Delaney*, 511 F. Supp. 3d at 69.  Therefore, plaintiff has failed to establish that he has standing to bring his 14th Amendment and ADA claims.  And without a federal claim to establish federal question jurisdiction, the court declines to exercise supplemental jurisdiction over the proposed additional state law claims.

Accordingly, the motion to amend the complaint will be denied on the basis that amendment would be futile.

## V.    Conclusion

For the foregoing reasons, defendant's motion to dismiss for lack of jurisdiction is DENIED and defendant's motion to dismiss for failure to state a claim is GRANTED.  Plaintiff's motion to amend the complaint and motion to strike certain pages and exhibits from defendant's memorandum are DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  December 9, 2022          Chief Judge, United States District Court

ADD26

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**Robert Meltzer**

          Plaintiff

      V.

**The Trial Court of the Commonwealth
by John Bello, Administrator**

          Defendant

CIVIL ACTION

NO. 1:22-10230-FDS

**ORDER OF DISMISSAL**

Saylor, C. J.

   In accordance with the Court's Memorandum and Order dated December 9, 2022, it is hereby ORDERED that the above-entitled action be and hereby is DISMISSED.

                        By the Court,

 12/12/2022                  /s/ Flaviana de Oliveira
    Date                     Deputy Clerk